**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **TERRA BOOKER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | No: 09 C 1996 |
| v. ) | |
| ) | Magistrate Judge Jeffrey Cole |
| **CAROLYN COLVIN,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

**INTRODUCTION**

The plaintiff seeks an award of $10,766.75 in attorneys' fees and $385.93 in costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, arguing that the Commissioner's position in denying her application for Disability Insurance Benefits was not substantially justified. The EAJA provides that a district court may award attorneys' fees where (1) the plaintiff is a "prevailing party"; (2) the government's position was not substantially justified; (3) no "special circumstances make an award unjust"; and (4) the fee application is submitted to the court within 30 days of final judgment and is supported by an itemized statement. 28 U.S.C. § 2412(d)(1)(A), (B); *Golembiewski v. Barnhart*, 382 F.3d 721, 723-24 (7th Cir. 2004). Costs are available under 28 U.S.C. § 2412(a)(1). Here, by virtue of the remand of his case, the plaintiff is the prevailing party. *Shalala v. Schaefer*, 509 U.S. 292, 302 (1993). There are no "special circumstances" alleged. *See Golembiewski*, 382 F.3d at 724; *United States v. Hallmark Const. Co.*, 200 F.3d 1076, 1079 (7th Cir. 2000). The plaintiff's application was timely filed and is supported by an itemized statement. As to the final point – whether the government's position was substantially justified – the

Commissioner bears the burden of proof. *Scarborough v. Principi*, 541 U.S. 401, 416 (2004); *Golembiewski*, 382 F.3d at 724. Here, the Commissioner concedes the point. The Commissioner also does not object to the number of hours the plaintiff's attorney spent on this case. The only issues are whether the plaintiff is entitled to a cost of living increase of EAJA's $125 per hour statutory rate, and whether the fee award should be paid directly to plaintiff's attorney. The answer depends upon the interpretation and application of the Seventh Circuit's decision in *Mathews-Sheets v. Astrue*, 653 F.3d 560 (7th Cir. 2011)(Posner, J.). At the conclusion of that portion of the opinion dealing with counsel's entitlement to a cost of living adjustment to EAJA's $125 rate – and before turning to the separate question of whether the court can order the fee award paid to the lawyer rather than the client – Judge Posner said that:

> and so on remand the plaintiff's lawyer will have to show that without a cost of living increase that would bring the fee award up to [the requested rate], a lawyer capable of competently handling the challenge that his client mounted to the denial of social security disability benefits could not be found in the relevant geographical area to handle such a case.

*Id.* at 565.

Based on this statement, the Commissioner insists that *Mathews-Sheets* imposes a "more onerous demonstration" than previously required by a lawyer seeking a cost of living increase. *Amey v. Astrue*, 2012 WL 4738985, 3 (N.D.Ill. 2012)(finding it unnecessary to decide the issue).[1] With all deference, this conclusion, resting as it does on a hyper literal reading of a single sentence at the end of the relevant portion of the *Mathews-Sheets* opinion is contrary to the rules regarding the proper reading of cases – rules rigorously adhered to by Judge Posner, himself.

---

[1] Previously, the Seventh Circuit seemed to allow a cost of living adjustment without what the Commissioner insists is a new requirement under *Mathews-Sheets*. *Tchemkou v. Mukasey*, 517 F.3d 506, 512 (7th Cir. 2008)("We believe that, given the passage of time since the establishment of the hourly rate, a cost-of-living adjustment is warranted.").

2

First, a literal reading of a single sentence in a judicial opinion "is a disservice to courts, as well as a common source of erroneous predictions concerning the scope and direction of the law...." *All-Tech Telecom v. Amway Corp.*, 174 F.3d 862, 866 (7th Cir. 1999)(Posner, C.J.). That sort of approach "treat[s] a judicial opinion as if it were a statute...." *Id.* But "[j]udicial opinions must not be confused with statutes...." *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010)(*En Banc*). *See also CBS, Inc. v. F.C.C.,* 453 U.S. 367, 3855 (1981).

One of Judge Posner's favorite themes, repeatedly stressed, is that"even where "[l]anguage in some... cases could be read to suggest" a specific result, the language is not decisive, and it "is a disservice to judges and a misunderstanding of the judicial process to wrench general language in an opinion out of context." *Aurora Loan Services, Inc. v. Craddieth,* 442 F.3d 1018, 1026 (7th Cir.2006). In *All-Tech Telecom v. Amway Corp*., 174 F.3d 862, 866 (7th Cir. 1999), he put it this way: "It is a disservice to courts, as well as a common source of erroneous predictions concerning the scope and direction of the law, to treat a judicial opinion as if it were a statute, every clause of which was law. It is difficult to write a judicial opinion without making some general statements by way of background and explanation. But in a system of case law such statements can be misleading if carelessly lifted from the case-specific contexts in which they were originally uttered." *Id.*, at 866. *See also Brown v. Calamos,* 664 F.3d 123, 128 (7th Cir.2011)(Posner, J.); *Miller v. Dobier*, 634 F.3d 412, 415 (7th Cir.2011)(Posner, J)("Language in a few cases could be read to suggest that a pretrial detainee or a civil detainee does not have the same rights as prison inmates unless the challenged restriction imposed on him is intended as punishment. ... But such a reading

3

cannot be correct....").[2]

### A.

The plaintiff is requesting an hourly rate of $173.75 per hour. To support this request, plaintiff's attorney offers (1) the Consumer Price Index ("CPI") for the region detailing the effects of inflation on a month-by-month basis since January 1982 and claims that $173.75 is the "hourly rate for November 2009 – the month in which the majority of the legal work was performed" (*Plaintiff's Motion for Attorney's Fees*, at 5); (2) his affirmation that since 1996, his office expenses have increased significantly: for example, office rent has increased 3% per annum, salaries paid to administrative and legal staff have increased 3-5% annually to keep pace with those paid by other firms, and health insurance costs have increased 100%; (3) his assertion that competent counsel could not be found to take plaintiff's case for $125 per hour, given that the success rate in federal court for similar cases is about 50%, *see Martinez v. Astrue,* 630 F.3d 693, 695 (7th Cir. 2011), making the effective hourly rate just $67.50 an hour; (4) the Social Security Administration's own increase of the ceiling for administrative fee agreements by 50% since 1996; (5) his affirmation that his non-contingency fee has increased 52% since 1996 – when Congress set the current $125 EAJA rate – and that his requested rate is only a 40% increase over that 1996 statutory rate; (6) affidavits from four other attorneys practicing disability law in the area attesting their hourly rates ranged from $165 to $500 per hour; and that they would not take a Social Security case without an inflation

---

[2] The Seventh Circuit has consistently recognized these basic principles governing the reading of cases. *See e.g., United States v. Skoien*, *supra*; *East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 705 (7th Cir.2005)("Although we stated in *Panoramic* that damages would not adequately remedy a permanent loss of jobs, that language must be read in context."); *Colon v. Option One Mortgage Corp.,* 319 F.3d 912, 920 (7th Cir.2003) ("Although the Illinois courts have employed language that, read alone, might suggest [a particular result], these cases must be read in the context of the entire statutory scheme. To read the Illinois courts' statements out of context would frustrate the operation of that scheme."). *Accord Brock v. Astrue,* 674 F.3d 1062, 1065 (8th Cir. 2012).

adjustment. (*Plaintiff's Motion for Attorney's Fees*, ¶¶ 12, 16-18).

The Commissioner argues that the plaintiff has not shown that no competent lawyer could be found in the Chicagoland area who would have brought the case for a fee of $125. Precisely how that showing could be made, the Commissioner does not say. And perhaps for good reason. Given current economic conditions and the number of lawyers who are out of work, it is probable that there is a competent lawyer in the Chicago area who would take a Social Security appeal for $125 per hour. Thus, properly understood, the Commissioner's reading of *Mathew-Sheets,* if accepted, would impose a burden of proof that could not, in all likelihood, ever be met.

**B.**

*Mathews-Sheets* was written against a backdrop of severe dislocations in the market for attorneys in the Chicago area, and indeed, throughout the country. It is common knowledge that there is a glut of lawyers on the market, that law schools continue to churn out lawyers in numbers that exceed available jobs, and that older lawyers and those deemed "unproductive" are losing their jobs at an unprecedented rate as law firms, large and small, attempt to deal with the economic challenges confronting them. *See generally,* Steven J. Harper, The Lawyer Bubble: A Profession In Crisis (Basic Books 2013). It is thus folly to suggest that no competent lawyer in Chicago could be found to handle a Social Security appeal for $125 – "a field of law by no means esoteric." *Mathews-Sheets*, 653 F.3d at 565.

Judge Posner (and Judges Wood and Rovner, the other members of the panel in *Mathews-Sheets*) could hardly have been unaware of the current situation confronting lawyers and the nation. And even though the Commissioner is not free to ignore economic reality, *Sanders v. Apfel,* 136 F.3d 137 (5th Cir.1998), her interpretation of *Mathews-Sheets* attributes to the panel economic

5

obliviousness. What Judge Posner said in another context applies here: "If this 'literal' interpretation affronted the common sense of, or the economic realities behind, [the interpretation], that would be a powerful reason to reject it.*" Call v. Ameritech Management Pension Plan*, 475 F.3d 816, 821 (7th Cir. 2007). *See also*, Posner, How Judges Think, 117 (Harv. Univ. Press 2008)("A lawyer's position in a case in the open area that violates common sense is a strong candidate for rejection.").

Apart from this, the position advanced by the Commissioner, if accepted, would impose a burden of proof on an applicant seeking a cost of living increase in fees under EAJA that would impermissibly result in a proceeding that would approach"'in complexity a public utility commission's rate of return proceeding.'" *Sosebee v. Astrue,* 494 F.3d 583, 588 (7th Cir. 2007). How could it be shown that no competent lawyer would take the case for $125 per hour? Would the lawyer be required to conduct some sort of census or sampling of a large cross section of lawyers in Chicago? How else would one prove that "no competent lawyer could be found" who would take the case for $125 per hour? But a sufficiently comprehensive sampling or its equivalent would result in the complexity and dilation of the proceedings forbidden by *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)("a request for attorney's fees should not result in a second major litigation") and cases such as *Sosebee*, where the court said that "[t]he EAJA is meant to open the doors of the courthouse to parties, not to keep parties locked in the courthouse disputing fees well after the resolution of the underlying case. *The EAJA's requirements must be interpreted accordingly.*" 494 F.3d at 588 (Emphasis supplied).

*Mathews-Sheets*, itself, implicitly rejected any notion of a census or sampling. In discussing the "limited-availability"special factor provision of the Act, Judge Posner cited approvingly, 563

F.3d at 564-65, Judge Boudin's opinion in *Atlantic Fish Spotters Ass'n v. Daley,* 205 F.3d 488 (1st Cir.2000):

> To anyone familiar with Washington law practice, rates of $175 to $250 per hour are scarcely surprising; and regardless of the level of possible reimbursement it probably made excellent sense for plaintiffs to select an expert advocate. But in law practice, as with airline fares, deviations from the "customary" rate are legion because the lawyer's unused hours (like empty airline seats) are a perishable asset. What the declaration [in support of the enhanced fee request] needed to say, with at least modest support, is that *as a practical matter* the plaintiffs would be unable to find a fisheries law expert for $125 (assuming *arguendo* that one was required).
>
> We say "modest support" because of *practical realities. No one expects the plaintiffs to conduct statistical surveys on a collateral matter like attorney's fees,* and the antitrust laws do not encourage counsel to spend much time discussing fee levels with competing lawyers. But simply to say that counsel's own customary fee bottoms out at $175 and there are not many lawyers in the country with the same expertise just does not show that exceeding the cap was necessary to procure a fisheries expert.

205 F.3d at 493(Emphasis supplied)(parentheses in original).[3] The practical realities that preclude the need to conduct some sort of survey or census in connection with one special factor of EAJA, also preclude that sort of endeavor in cases dealing with requests for enhanced fees based on inflation.

Not surprisingly, the Commissioner's narrow reading of *Mathews-Sheets* has not been well received. The judges of this district have sought a rationale that would be faithful to the opinion as a whole and to the text of EAJA. Their approach is, at bottom, consistent with the rules that govern the proper analysis of judicial opinions. And so, there are numerous opinions positing how *Mathews-Sheets* is "best read," *Brent v. Astrue*, 2012 WL 6685688, *4 (N.D.Ill. 2012); *Mireles v. Astrue*, 2012 WL 4853065, *3 (N.D.Ill. 2012), or explaining what the court "seems to be saying,"

---

[3] Judge Posner characterized this formulation as "crisp." *Mathews-Sheets*, 653 F.3d at 565.

*Carnaghi v. Astrue*, 2012 WL 6186823, *3 (N.D.Ill. 2012), or what it is "more likely"saying, *Just v. Astrue*, 2012 WL 2780142, 2 (N.D.Ill.) (N.D.Ill. 2012), or that it is unclear what *Mathews - Sheets* meant. *See, e.g., Claiborne ex rel. L.D. v. Astrue*, 2012 WL 2680777, *3 (N.D.Ill. 2012).

## C.

What is clear is that there is more to *Mathews-Sheets* than the single sentence on which the Commissioner relies, and that the rules governing the reading of judicial opinions require a more encompassing and discerning analysis than that advanced by the Commissioner. *Mathews-Sheets* began with a review of the statutory text. The EAJA provides that a fee award "shall be based upon prevailing market rates for the kind and quality of the services furnished, except that ... attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living *or* a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii)(Emphasis supplied). As *Mathews-Sheets* recognized the two factors – cost of living and limited availability of qualified attorneys – are separate. 653 F.3d at 563 ("to justify a higher rate the plaintiff must point to inflation *or* some other special factor.").

The opinion stressed that it was not merging the two disjunctively phrased components:

> It might seem that because the cost of living special factor is not automatic, the two enumerated special factors merge; the lawyer arguing for a cost of living increase must show limited availability of lawyers able to handle such a case. *But that is not correct*.
>
> Inflation might have an impact across a range of fields of practice that would make it difficult to hire a competent lawyer even in a rather routine case in a field of law by no means esoteric; in such a situation a fee above the statutory fee might well be justified. When inflation is not a factor, the lawyer does have to show that there is something special about the particular type of case that justifies the higher fee. That special factor has not been invoked in this case.

8

653 F.3d at 565.

Yet, the sentence in *Mathews-Sheets* on which the Commissioner relies would result in a "dual requirement" that would contradict the disjunctive language of the statute. *See, e.g., Brent v. Astrue*, 2012 WL 6685688, *4 (N.D.Ill. 2012); *Mireles v. Astrue*, 2012 WL 4853065, *2 (N.D.Ill. 2012); *Carnaghi v. Astrue*, 2012 WL 6186823, *3 (N.D.Ill. 2012); *Claiborne*, 2012 WL 2680777, *3. That *Mathews-Sheets* was not intended to impose a dual or separate requirement for an EAJA applicant seeking a fee adjustment based on inflation is further confirmed by the passage in the opinion that came before the one on which the Commissioner relies. In discussing what a lawyer seeking a fee increase based on inflation had to do, the court said that he must:

> show that [inflation] actually justifies a higher fee; for while it might seem obvious that a statutory price ceiling should be raised in step with inflation, to do that as a rote matter would produce windfalls in some cases. Inflation affects different markets, and different costs in the same market, in different ways. The framers of the Equal Access to Justice Act were right therefore not to create an *entitlement* to an inflation adjustment; the lawyer seeking such an adjustment must show that *inflation has increased the cost of providing adequate legal service to a person seeking relief against the government.* No such showing was made.

653 F.3d at 563 (emphasis partly in original and partly supplied)(citations omitted).

The court was concerned, then, not just with inflation in the abstract, but with the manner in which inflation affected costs in the relevant legal market. Then, a few sentences after the passage quoted above, Judge Posner added: "[a]n inflation adjustment must, as we have said, be justified by reference to the particular circumstances of the lawyer seeking the increase." 653 F.3d at 563. Again, there was no mention of the non-availability of a competent lawyer willing to take the case for $125 per hour. Instead, in the very next sentence, the focus was on the effect inflation had on the lawyer applying for the increased fee: "Suppose inflation had not affected the wages he

9

pays his clerical employees, or had been offset by advances in law-office technology or changes in the standards and procedures of the Social Security Administration that made it cheaper to litigate claims for disability benefits." In that event, inflation would not warrant an increased fee award. *Id*. at 564-565. If, as the Commissioner contends, there was a separate, additional requirement, one would have expected at least some mention of it in the extended discussion in the very section in which the issue of the proof needed to warrant a cost of living enhancement was being explicated.

Still, the sentence on which the Commissioner relies cannot be ignored. But neither can it be read in isolation as the Commissioner has done, and which, as Judge Posner has cautioned, does a disservice to proper analysis. When read in context, the statement in *Mathews-Sheets* that proof of entitlement to a cost of living increase requires a showing that without one a capable lawyer could not be found in the relevant geographical market becomes clear: the inability to procure such a lawyer is not a separate, stand-alone component of proof, but follows from the showing that *inflation* in the relevant geographic market has increased not only the applicant's costs of providing competent legal service to a person seeking relief against the government, but also has affected the costs of other lawyers in that market as well. *But see Heichelbech v. Astrue*, 2011 WL 4452860, at *2 (S.D.Ind. 2011)(refusing to exceed the $125 ceiling where the plaintiff "made no attempt to demonstrate that, because of the cost of living increase since 1996, attorneys could not be found in the Evansville community and surrounding geographical area to handle a social security case for $125 an hour").

The needed proof need not be elaborate. It need only have, to borrow Judge Boudin's apt phrasing in *Atlantic Fish Spotters Ass'n,* 205 F.3d 493, "modest support....We say modest support because of practical realities. [As discussed above, *see supra* at 6], no one expects the plaintiffs to

10

conduct statistical surveys on a collateral matter like attorney's fees." And we say "modest" support because a proceeding to recover fees under the Equal Access to Justice Act or any other fees shifting statute is intended to be summary. *See supra* at 6. Since "'[a] request for attorney's fees should not result in a second major litigation,'" courts must avoid any "interpretation of the fee-shifting statutes that would have 'spawn[ed] a second litigation of significant dimension....'" *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,*, 532 U.S. 598, 609 (2001). The Commissioner's interpretation of *Matthews-Sheets* is not faithful to this injunction.

And so the question in this and like cases is whether the plaintiff's lawyer has presented sufficient proof of inflation's effect on his costs and on the costs of other lawyers in the relevant geographic market. If that showing is made, the plaintiff will perforce have shown that a competent lawyer could not be found to have represented the plaintiff for $125 per hour.[4]

**D**.

The plaintiff's attorney has submitted evidence beyond the usual CPI index which, it must be noted, does not support a $173.75 hourly rate. The index for November 2009 – which plaintiff's counsel uses as the basis for his requested rate – is 212.206. The indices for 1996 – when the statutory rate was increased – range from a low of 154.6 in January to a high of 159.7 in December. Thus, the inflationary increases from 1996 to November 2009 range from 37.26% to 32.87%, which would support a fee enhancement from a high of $171.57 to a low of $166.10. From March 1996 – when the rate increase went into effect – to November 2009, the inflationary increase was 35.77%,

---

[4] Most courts have interpreted *Mathews–Sheets* to allow a rate increase upon a showing of both general inflation and higher costs for the lawyer seeking the adjustment. *See Mirles v. Astrue,* 2012 WL 4853065 (N.D. Ill. 2012)(collecting cases).

11

allowing for a cost-of-living enhancement to $169.71. Plaintiff's counsel is seeking a 39% enhancement, but he has provided no support for that figure. [5]

The plaintiff's counsel has submitted evidence in support of an increased fee beyond the CPI, which he claims shows that the market for these types of legal services has been affected by inflation since 1996. First there is counsel's submission that success in a Social Security appeal in federal court is a 50-50 proposition. Since inflation has affected the costs of providing legal services in the period between 1996 and 2013, a case that offers only a 50-50 chance of success and will pay only $125 per hour is not likely to be attractive to a competent lawyer. Next is the Social Security Administration's own increase of its administrative fee ceiling. Plaintiff's counsel claims this was due to inflation, and that's most likely the case. Moreover, the Commissioner does not suggest otherwise, thus conceding (if not waiving) the point. *Gonzalez-Servin v. Ford Motor Co.,* 662 F.3d 931, 933 (7th Cir.2011); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). *United States v. Vrdolyak,* 593 F.3d 676, 691 (7th Cir.2010).

Further, counsel submits that his contingency fee has increased by 52% since 1996. While one can assume inflation has been a factor, counsel doesn't specifically tie this increase to cost of living inflation, so this is unhelpful. (*Plaintiff's Motion for Attorney's Fees*, at 8). Later in his submission, he does mention that his costs have increased over the period, but, again, he doesn't specifically say the increase was due to inflation and not to some other factor. (*Plaintiff's Motion for Attorney's Fees*, at 8). Nonetheless, we would be blind to economic reality not to acknowledge that inflation had to have played some role in these increases.

---

[5] In *Mathews - Sheets*, the plaintiff was seeking a little over $170 per hour. Judge Posner noted that the appropriate adjusted number of $167. Since the case was being reversed in any event, there was no need to "quibble over $3 an hour." 653 F.3d at 563.

Fourth, counsel submits that four of his competitors charge hourly rates ranging from $165 to $500 per hour for handling Social Security claims. His assertion is meaningless without reference to what they charged in 1996. The affidavits from the attorneys provide a bit more context. Jan Kodner affirms that, "from time to time," she has submitted fee petitions in Social Security cases and has been awarded fees ranging from $165 to $300 by the Social Security Administration. (Kodner Aff., ¶ 4). She further affirms that fees she has been awarded in federal court under EAJA have always been based on the statutory rate plus cost of living increases. (Kodner Aff., ¶ 4). But that was presumably before *Mathews-Sheets*, and prevailing rates, whether local or national, do not translate into an automatic increase. *Headlee v. Bowen*, 869 F.2d 548, 552 (10th Cir. 1989).[6] Moreover, Ms. Kodner doesn't say that she would take a case without a cost-of-living enhancement and doesn't speak to the effects inflation have had on her costs and what she charges since 1996. Eric Schaufner's affidavit is similarly unhelpful. He simply avers that his fee ranges form a cost-of-living adjusted $175 per hour to $350 per hour. (Schaufner Aff., ¶ 5).

Fred Daley's affidavit was clearly prepared with an eye toward *Mathews-Sheets* and, so, offers the most support for plaintiff's counsel's request. Mr. Daley not only speaks about his customary fees, but states that inflation has affected his bottom line since 1996, that he would not take a case without an inflationary enhancement based on the CPI, and that, of the several other attorneys he knows who practice in the area, none would take a case without such an enhancement. (Daley Aff., ¶¶ 7-10). David Traver's affidavit is also more to the point. He says inflation has increased his cost of providing legal services since 1996, and that he doesn't represent clients in

---

[6] *Headlee* was cited approvingly in *Mathews-Sheets*.

Social Security cases without an enhancement based on the CPI. (Traver Aff., ¶¶ 5-6).[7] These sorts of affidavits are significant. *See Scott v. Astrue,* 2012 WL 527523, 5 (N.D.Ill. 2012).

All in all, plaintiff has made a sufficient showing as warranting a CPI enhancement to $169.71 per hour, based on the increase in the CPI from March 1996 to November 2009.

**E.**

The parties are also at odds over whether the fee award should be paid to plaintiff or directly to her counsel. Plaintiff's counsel has submitted a copy of his fee agreement with the plaintiff in which she agreed that any EAJA fee award shall be payable directly to him. (*Plaintiff's Motion for Attorney's Fees*, Ex. 2). Nevertheless, the Commissioner argues that, under *Astrue v. Ratliff,* _U.S._, 130 S.Ct. 2521 (2010) – which held that the statutory fee entitlement belongs to the party rather than to the party's lawyer – the government is entitled to determine whether the plaintiff owes any debt to the government before any fee can be directed to counsel. *Ratliff* did indicate that if there was a fee assignment, the only ground for requiring any award go to the plaintiff is that the plaintiff owes a prior debt to the government, 130 S.Ct. at 2529; *Mathews-Sheets*, 653 F.3d at 565-66. We do not read *Ratliff* or *Mathews-Sheets* as requiring that yet another procedural layer be added to these cases. If the plaintiff owes a debt, the time to indicate as much is during the EAJA briefing, not well after. This is especially the case here, where the government isn't even contesting the propriety of a fee award, just the amount. Accordingly, the fee award will be paid directly to plaintiff's counsel.

---

[7] Of course neither Mr. Daley nor Mr. Traver can know with certainty when they take a case that they will receive a CPI enhancement, but their point is more likely that if they knew otherwise, they would not accept such cases because inflation would not allow them to do so.

## CONCLUSION

The plaintiff's motion for attorneys' fees and costs [# 31] is granted. Plaintiff's counsel's enhanced hourly rate shall be $169.71. Plaintiff shall submit an amended statement reflecting the new total amount and the government shall pay the resulting award directly to plaintiff's counsel.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 5/16/13