**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| **TERRA BOOKER,** )<br>)<br>**Plaintiff,** )<br>) **No: 09 C 1996**<br>**v.** )<br>) **Magistrate Judge Jeffrey Cole**<br>**CAROLYN COLVIN,** )<br>**Commissioner of Social Security,** )<br>)<br>**Defendant.** )<br>) | |

**MEMORANDUM OPINION AND ORDER**

The Commissioner has filed a motion under Fed.R. Civ.P. 59(e) asking the court to amend its previous order in which it concluded that the fee award in this case should be paid directly to plaintiff's counsel, because counsel had an assignment agreement with plaintiff. *Booker v. Colvin*, 2013 WL 2147544 (N.D.Ill. 2013). That ruling was dictated by Seventh Circuit precedent. In *Mathews-Sheets v. Astrue*, 653 F.3d 560 (7th Cir. 2011), the court interpreted the Supreme Court's ruling in *Astrue v. Ratliff*, – U.S. –, 130 S.Ct. 2521 (2010), with Judge Posner speaking for the court:

> Some language in the Supreme Court's opinion suggests that assignment would make no difference: "The fact that the statute awards to the prevailing party fees in which her attorney may have a beneficial interest or a contractual right does not establish that the statute 'awards' the fees directly to the attorney." *Id.* at 2526. But elsewhere the opinion notes that the government "often paid EAJA fees directly to attorneys in cases in which the prevailing party had assigned its rights in the fees award to the attorney (which assignment would not be necessary if the statute rendered the fees award payable to the attorney in the first instance) ..., [though it] has since continued the direct payment practice only in cases where 'the plaintiff does not owe a debt to the government *and assigns the right to receive the fees to the attorney.*' " *Id.* at 2529. The language we've italicized suggests that if there is an assignment, the only ground for the district court's insisting on making the award to the plaintiff is that the plaintiff has debts that may be prior to what she owes her lawyer. There is no indication of that in this case, so to ignore the assignment and order the fee paid to her would just create a potential collection problem for the lawyer.

*Mathews-Sheets v. Astrue*, 653 F.3d 560, 565-66 (7th Cir. 2011). In this case, as in *Mathews-Sheets*, the Commissioner gave no indication that the plaintiff owed the government a prior debt and, so, the Commissioner was ordered to pay the fee directly to plaintiff's counsel. This majority of judges in this district have taken this approach when the Commissioner has done no more than speculate that there may be an outstanding debt. *See, e.g., Kazmi v. Colvin*, 2013 WL 1628192, 4 (N.D.Ill. 2013); *Wilson v. Colvin*, 2013 WL 1385590, 1 (N.D.Ill. 2013); *Bias v. Astrue*, 2013 WL 615804, 3 (N.D.Ill. 2013); *Carnaghi v. Astrue*, 2012 WL 6186823, 6 (N.D.Ill. 2012); *but see Tadros v. Astrue*, 2012 WL 965090, 4 n.2 (N.D.Ill. 2012)(allowing government to make inquiry after award); *Oatis v. Astrue*, 2012 WL 965104, 1 (N.D.Ill. 2012)(same)

This case provides an example of why the government cannot be left to make its debt inquiry at its leisure. The Commissioner argues that she – actually, the Department of the Treasury – cannot determine whether there is a pre-existing debt prior to the award of fees. Why this is, the Commissioner does not say. How long such a seemingly routine inquiry might take, again, the Commissioner gives us no inkling. But, apparently, it takes longer than ten months, at least.

The motion for fees in this case was filed in July of 2012 – about a year ago. The Commissioner responded some five weeks later. In that response, the Commissioner did not dispute that fees should be awarded, she merely disputed that they should be reduced. So, the Commissioner has been aware that there would be a fee award in this case since as early as August 21, 2012. Yet, nearly ten months later, when the Commissioner filed her Fed.R.Civ.P.59(e), *she still was unable to say whether the plaintiff owed any debt to the government.* How much longer the Commissioner and the Department of the Treasury would need is anyone's guess, but this has gone on long enough.

Really, the inquiry ought to have been made as long ago as May 4, 2012, when the order

remanding this case was issued. Petitions for EAJA fees follow remand orders as invariably as the sound of thunder follows the flash of lightning. By the time the petition is filed and briefed – in this case, that took the parties nearly four months – the Commissioner and the Treasury Department should be able to come up with some definitive answer to the debt question. Again, the Commissioner gives no hints as to why this could not have been done.

Instead, the Commissioner's preference appears to be that the case stretch on indefinitely, with no end point in sight. That is simply unacceptable. Social Security appeals cases are becoming legion and, as a result, they tend to stretch on for years. The instant case, for example, is over four years old. At some point, there must be closure. The Supreme Court has cautioned against allowing EAJA petitions to morph into satellite litigation. *Gisbrecht v. Barnhart*, 535 U.S. 739, 808 (2002). "All good things, even not so good things, must come to an end, and this is one of them." *Rochford v. Joyce*, 1991 WL 34633, 1 (N.D.Ill. 1991)(Moran, J.). There cannot be another ten months, or a year, or perhaps even more tacked onto the case while the government casually undertakes some investigation – the machinations of which the Commissioner has left to the imagination – into whether the plaintiff owes it any money.[1]

A Rule 59(e) motion "does not provide a vehicle for a party to undo its own procedural

---

[1] Judges in the Southern District of Indiana have taken the tack of allowing the government 30 days – or a reasonable period – in which to determine whether the plaintiff owes a pre-existing debt. *See Earls v. Colvin*, 2013 WL 1869025, 1 (S.D.Ind. 2013); *Orr v. Astrue*, 2013 WL 1840471, 3 (S.D.Ind. 2013); *Hudnall v. Astrue*, 2012 WL 2504883, 3 (N.D.Ind. 2012). Obviously, the Commissioner would not have made any such deadline in this case, and the result would have been the same. The cases in this district that have allowed additional time for government inquiry have left it open ended – *see Tadros v. Astrue*, 2012 WL 965090, 4 n.2 (N.D.Ill. 2012); *Oatis v. Astrue*, 2012 WL 965104, 1 (N.D.Ill. 2012) – but given the inordinate amount of time that has already passed in this case without any inquiry, that approach is completely unappealing.

failures . . ." *United States v. Resnick*, 594 F.3d 562, 568 (7th Cir. 2010). Here, the failure was the Commissioner's, and it continues to be even now. The Commissioner's insouciance in this case threatens the public interest in the prompt resolution of legal disputes, and that interest transcends the immediate interest of the parties. *See Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1380 (7th Cir. 1990); *Weingarten Realty Investors v. Miller,* 661 F.3d 904, 913 (5th Cir.2011); *Gray v. Schaub,* 1999 WL 313743, *2 (7th Cir.1999); *Matter of Stavriotis,* 977 F.2d 1202, 1205 (7th Cir.1992). That the threat to that interest comes from the Government makes the situation all the more regrettable.

## CONCLUSION

The Commissioner's motion to alter or amend judgment [# 43] is DENIED.

June 17, 2013